IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No.<br>) |
| v. | )<br>) |
| NORRIS BROS. EXCAVATING, LLC,<br>NORRIS BROS. PROPERTIES, LLC,<br>JACOB NORRIS, and JUSTIN NORRIS, | )<br>)<br>)<br>) |
| Defendants. | ) |

# COMPLAINT

COMES NOW Plaintiff United States Fire Insurance Company ("USFIC" or "Company"), by and through the undersigned counsel, and states the following for its Complaint against Defendants Norris Bros. Excavating, LLC ("Principal"), Norris Bros. Properties, LLC ("NB Properties"), Jacob Norris, and Justin Norris (collectively, the "Defendants" or the "Indemnitors"):

## I.     PARTIES

1. USFIC is a Delaware corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Morristown, New Jersey. Thus, USFIC is a citizen of the State of Delaware and the State of New Jersey for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2. Norris Bros. Excavating, LLC is a Tennessee limited liability company formed under the laws of the State of Tennessee with a principal place of business located in Crossville, Tennessee. Upon information and belief, Principal's member(s) are all citizens of the State of Tennessee. Thus, Principal is a citizen of the State of Tennessee for the purposes of diversity

jurisdiction under 28 U.S.C. § 1332(a). Principal can be served with service of process through its registered agent Justin L. Norris at 1007 Rodgers Road, Crossville, TN 38572.

3. Norris Bros. Properties, LLC is a Tennessee limited liability company formed under the laws of the State of Tennessee with a principal place of business located in Crossville, Tennessee. Upon information and belief, NB Properties' member(s) are all citizens of the State of Tennessee. Thus, NB Properties is a citizen of the State of Tennessee for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). NB Properties can be served with service of process through its registered agent Justin L. Norris at 22 Northside Lane, Crossville, TN 38571.

4. Jacob Norris is a citizen of the State of Tennessee and may be served with process at his residence at 413 Rebecca Drive, Crossville, Tennessee 38555.

5. Justin Norris is a citizen of the State of Tennessee and may be served with process at his residence at 448 Perry Creek Road, Crossville, Tennessee 38572.

## II. JURISDICTION AND VENUE

6. This Court possesses original jurisdiction over USFIC's claims against the Defendants pursuant to 28 U.S.C § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

7. This Court possesses the power to declare the respective rights and other legal relations of USFIC and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

8. Venue is proper in the Northeastern Division of the Middle District of Tennessee under 28 U.S.C. § 123(b)(2) and 28 U.S.C. § 1391(b) because the Defendants reside in the Middle District of Tennessee, Northeastern Division.

### III.     FACTUAL ALLEGATIONS

### The Indemnity Agreement

9.     Principal, Jacob Norris, and Justin Norris executed a General Indemnity Agreement, dated October 1, 2019 (the "Indemnity Agreement"), in favor of USFIC as inducement for USFIC to issue certain surety bonds on behalf of Principal. A true and accurate copy of the Indemnity Agreement is attached as Exhibit 1.

10.     The Indemnity Agreement defines "Indemnitor" to mean:

> [T]he undersigned persons or entities, individually and collectively, and all of their existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, **related entities**, co-venturers, joint ventures, **affiliates**, subsidiaries, divisions, and marital communities **along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any Indemnitor has ownership or beneficial interest**. Indemnitor shall also include any Principal.

Exhibit 1 (emphasis added).

11.     The Indemnity further states that the term "Indemnitor" shall:

> [A]lso include all new Indemnitors added to this Agreement by rider, and all of their heirs, executors, administrators, successors and assigns, and any entity that obtains Bonds from Company at the request of any of the aforementioned parties, or any combination of the above.

Exhibit 1.

12.     Defendant NB Properties is a related entity and affiliate to Principal and is partially or wholly owned and/or controlled by one or more of Principal, Jacob Norris, and Justin Norris. Upon information belief, one or more of Principal, Jacob Norris, and Justin Norris has an ownership or beneficial interest in NB Properties. Thus, NB Properties is an "Indemnitor" under the Indemnity Agreement.

13. Paragraph 3 of the Indemnity Agreement states:

<u>Joint and Several Liability</u>. The obligations of the Indemnitors hereunder are joint and several. Company is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and any such settlements shall not bar or prejudice actions by Company against or affect the liability of the other Indemnitors.

Exhibit 1.

14. Paragraph 5 of the Indemnity Agreement states:

<u>Indemnification and Hold Harmless</u>. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, defend, indemnify and hold harmless Company from and against any and all Loss, irrespective of whether Company has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of Company upon any claim. Company shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such payments. An itemized, sworn statement of Loss by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Indemnitors shall pay to Company interest on all disbursements made by Company at the maximum rate permitted by law, calculated from the date of each such disbursement. The Indemnitors will, at the request of the Company, procure the discharge of the Company from any Bond and all liability by reason thereof.

Exhibit 1.

15. The Indemnity Agreement defines "Bond" to mean:

[A]ny and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Company has executed or procured, or for which Company has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for or on behalf of any one or more of Indemnitors (without regard to whether any such Indemnitors signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns, whether issued in paper form or electronically. For the purpose of this Agreement, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

Exhibit 1.

    16.    The Indemnity Agreement defines "Loss" to mean:

[A]ll demands, liabilities, losses, costs, damages and expenses of any kind or nature, including legal fees and expenses, court costs, technical, engineering, accounting, consultant, expert witness and/or other professional fees and expenses, including the cost of inhouse professionals, which Company incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) Company's having executed any Bond or any other instrument or any Modification thereof; (ii) any investigation by Company in connection with any Bond or Contract; (iii) Company's prosecuting or defending any action in connection with any Bond; (iv) Company's obtaining or attempting to obtain the release of any Bond; (v) Company's recovering or attempting to recover Property (as hereinafter defined) in connection with any Bond or this Agreement; (vi) Indemnitors' failure to perform or comply with any promise, covenant, or condition of this Agreement; (vii) Company's enforcing by litigation or otherwise any of the provisions of this Agreement; and (viii) all interest accruing thereon at the maximum legal rate. Loss shall also include any and all amounts sufficient to discharge any Claim made against Company on any Bond and shall further include any premiums due on any Bond issued by Company on behalf of the Principal.

Exhibit 1.

    17.    The Indemnity Agreement defines "Claim" to mean:

[A]ny claim, notice of default, notice of termination, demand for payment, demand for meeting, action, proceeding, suit, judgment, or any form of notice, claim or demand received by Company in connection with any Bond or Contract.

Exhibit 1.

    18.    The Indemnity Agreement defines "Contract" to mean:

[A]ny agreement of, or undertaking by, any Indemnitor, the performance of which is bonded by Company and all Modifications thereof, whether made before or after the date of this Agreement, and all agreements between Indemnitors and Company. This shall also include, without limitation, any contract or obligation, the performance of which is guaranteed or covered either in whole or in part under a Bond.

Exhibit 1.

19. Paragraph 6 of the Indemnity Agreement states:

Settlement of Claims. Company shall have the right to adjust, settle or compromise any Claim unless the Indemnitors: (i) request, in writing, Company to litigate, defend, or appeal such Claim; and (ii) deposit with Company, at the time of such request, cash or collateral satisfactory to Company in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of Company, and to the extent that such litigation, defense, or appeal is not otherwise prohibited by law. Company's decision to adjust, settle or compromise any Claim shall be final and binding upon the Indemnitors. Company shall at all times have the right, but not the obligation, to retain the counsel and experts of its choice to defend itself from any Claim or to prosecute an action to preserve Company's rights with respect to collateral security, Contract funds, trust funds, liens on any bonded project or this Agreement, and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold Company harmless.

Exhibit 1.

20. Paragraph 7 of the Indemnity Agreement states:

Collateral Security. Immediately upon demand by Company, the Indemnitors shall deposit with Company a sum of money, as collateral security, in an amount Company, in its sole and absolute discretion, deems necessary at the time of said demand to protect Company from actual or anticipated Loss. Demand may be made as soon as: (i) the assertion of any Claim against Company; or (ii) Company determines that liability exists under any Bond; or (iii) Company has a reasonable basis to believe that it may incur or sustain liability or Loss; or (iv) any diversion of funds relating to any Contract by any Indemnitor in violation of this Agreement or applicable law; or (v) Company deems itself insecure, whether or not Company has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any Claim in whole or in part. Company shall be entitled to apply any collateral security held by it under this Agreement or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of Company as a result of its satisfaction of any Claim and to the direct payment of or reimbursement to itself of any Loss. Company shall have no duty to invest, or provide interest on, any collateral security deposited by the Indemnitors. The Indemnitors acknowledge and agree that their failure to immediately deposit with Company any sums demanded under this section shall cause irreparable harm to Company for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Company is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of

this Agreement shall operate as a judgment, lien and encumbrance on any Property owned by the Indemnitors.

Exhibit 1.

21. The Indemnity Agreement defines "Property" to mean:

[The] Indemnitors' rights, title and interest, whether now held or hereafter acquired in, or growing in any manner out of, or in any way related to: (i) Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest, including but not limited to subcontracts let; (ii) any and all sums due or which may hereafter become due under any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest and all damage claims and proceeds related thereto; (iii) all rights arising under any surety bonds or insurance policies; (iv) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information; (v) any and all real property owned by the Indemnitors, including all fixtures and (vi) any and all claims relating to or arising from any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest.

Exhibit 1.

### The Bonds and USFIC's Loss

22. In reliance upon the covenants and conditions in the Indemnity Agreement, USFIC issued surety bonds on behalf of Principal, including: (1) Performance Bond No. 602-126715-6 and Payment Bond No. 602-126715-6 (the "Ridgely Payment Bond"), pertaining to a contract between Principal and the Town of Ridgely, Tennessee relating to the Ridgely Lagoon Baffle Curtains and Aerators project (the "Ridgely Project"); and (2) Performance Bond No. 602-126712-9 (the "Cumby Performance Bond") and Payment Bond No. 602-126712-9, pertaining to a subcontract between Principal and J. Cumby Construction, Inc. ("J. Cumby") relating to the West Kingsport Pump Station (the "Kingsport Project"). The foregoing bonds shall be referred to collectively as the "Bonds."

23. Cottrell Electric, Inc. ("Cottrell"), a subcontractor to Principal on the Ridgely Project, asserted a claim against the Ridgely Payment Bond as a result of Principal's inability to pay Cottrell for labor and/or materials furnished on the Ridgely Project.

24. USFIC, pursuant and subject to its rights and obligations under the Ridgely Payment Bond and the Indemnity Agreement, paid and resolved Cottrell's demand on the Ridgely Payment Bond for the sum of $90,324.99. A true and accurate copy of the Final Release and Assignment executed by Cottrell is attached as Exhibit 2.

25. USFIC issued payment to Cottrell in the amount of $90,324.99 in good faith and based on the belief that it was liable for the amounts disbursed and/or that it was necessary or expedient to make such payment to Cottrell.

26. USFIC's payment to Cottrell under the Ridgely Payment Bond in the amount of $90,324.99 constitutes Loss as defined by the Indemnity Agreement for which the Defendants are jointly and severally obligated to indemnify and reimburse USFIC.

27. Moreover, in a letter dated February 16, 2021, J. Cumby terminated its subcontract with Principal pertaining to the Kingsport Project (the "Kingsport Subcontract") and made demand on USFIC pursuant to the Cumby Performance Bond. A true and accurate copy of the February 16, 2021 letter is attached as Exhibit 3.

28. Principal disputed the termination, and J. Cumby arranged to complete the Kingsport Subcontract. On or around December 20, 2021, J. Cumby submitted a sworn Proof of Claim in relation to its demand on the Cumby Performance Bond asserting that (a) the balance of the Kingsport Subcontract at termination totaled $312,786 and (b) the costs of installing and repairing Principal's subcontract work on the Kingsport Project totaled $960,000 as of the date of

the Proof of Claim. A true and accurate copy of J. Cumby's monetary demand to USFIC is attached as Exhibit 4.

29. On or around May 26, 2022, J. Cumby filed suit against Principal and USFIC in the Chancery Court for Sullivan County, Tennessee asserting, *inter alia*, a claim against USFIC under the Cumby Performance Bond. J. Cumby's Complaint asserts that J. Cumby's costs to correct and complete the work and otherwise satisfy the obligations under the Kingsport Subcontract exceeds $1,000,000.

30. J. Cumby's demand on USFIC under the Cumby Performance Bond constitutes a Claim against USFIC as defined by the Indemnity Agreement, entitling USFIC to make demand on the Defendants for collateral security to protect it from actual or anticipated Loss under the Cumby Performance Bond.

31. Further, USFIC has been forced to retain counsel and has incurred and continues to incur attorney's fees and related costs and expenses as a result of issuing the Bonds on behalf of Principal and enforcing the Indemnity Agreement, all such fees, costs, and expenses constituting Loss under the Indemnity Agreement for which the Defendants are jointly and severally liable to USFIC.

## Breach of the Indemnity Agreement

32. In a letter dated May 17, 2022, USFIC demanded that Principal, Jacob Norris, and Justin Norris (a) deposit with USFIC cash or other sufficient collateral, in an amount no less than $667,214, reflecting J. Cumby's then alleged costs to complete the Kingsport Subcontract less the balance of the Kingsport Subcontract, to serve as security to protect USFIC from incurring any Loss relative to J. Cumby's demand on the Cumby Performance Bond and (b) pay to and indemnify USFIC in the amount of $90,324.99 relative to the Loss incurred by USFIC in satisfying Cottrell's

claim on the Ridgely Payment Bond. A true and accurate copy of the May 17, 2022 letter is attached as <u>Exhibit 5</u>.

33. Despite demand, the Defendants have failed and refused to exonerate, reimburse, indemnify, and collateralize USFIC as required by the Indemnity Agreement.

34. The Defendants have breached the Indemnity Agreement, causing damage to USFIC for which the Defendants are jointly and severally liable.

## CAUSES OF ACTION

### Count I – Breach of the Indemnity Agreement

35. USFIC hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

36. Under Paragraph 5 of the Indemnity Agreement, as more fully set forth therein, the Defendants are contractually obligated to exonerate, defend, indemnify, and hold harmless USFIC from and against any and all Loss.

37. Further, under Paragraph 7 of the Indemnity Agreement, as more fully set forth therein, the Defendants are contractually obligated, upon demand by USFIC, to deposit a sum of money as collateral security in an amount deemed necessary by USFIC, in its sole and absolute discretion, to protect it from actual or anticipated Loss.

38. The Indemnity Agreement defines Loss to include, *inter alia*, all demands, liabilities, losses, costs, damages, and expenses of any kind or nature, including legal fees and expenses, incurred by USFIC by reason of (a) USFIC having issued any Bonds on behalf of Principal, (b) USFIC's investigation in relation to any Bonds or Contracts, (c) the failure of the Defendants to perform their obligations under the Indemnity Agreement, and (d) USFIC's enforcement of the Indemnity Agreement by litigation or otherwise.

39. To date, USFIC has incurred Loss in an amount no less than $90,324.99 satisfying Cottrell's claim on the Ridgely Payment Bond. USFIC faces additional exposure to Loss as a result of (a) J. Cumby's demand on the Cumby Performance Bond, (b) having to retain legal counsel to protect its rights and interests under the Bonds and the Indemnity Agreement, and (c) the failure of the Defendants to honor their obligations under the Indemnity Agreement.

40. Because USFIC continues to incur Loss and/or faces exposure to incurring further Loss, including fees and expenses enforcing the Indemnity Agreement, USFIC expressly reserves the right to modify and increase its demand on the Defendants.

41. Despite demand, the Defendants have failed and refused to exonerate, reimburse, indemnify, and collateralize USFIC in relation to all actual or anticipated Loss as required by the Indemnity Agreement.

42. The Defendants' failure to exonerate, reimburse, indemnify, keep indemnified, hold harmless and collateralize USFIC from and against any and all actual or anticipated Loss constitutes a material breach of the Indemnity Agreement.

43. USFIC has been damaged as a result of the Defendants' material breach of the Indemnity Agreement in an amount currently exceeding $777,538.99.

44. Therefore, USFIC is entitled to the entry of judgment against the Defendants in an amount necessary to fully exonerate, reimburse, indemnify, keep indemnified, hold harmless and collateralize USFIC from and against any and all actual or anticipated Loss, which amount currently exceeds $777,538.99 and will be proven at trial.

**Count II – Specific Performance of the Indemnity Agreement (Deposit of Collateral)**

45. USFIC hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

46. Under Paragraph 7 of the Indemnity Agreement, as more fully set forth therein, the Defendants are contractually obligated, upon demand by USFIC, to deposit a sum of money as collateral security in an amount deemed necessary by USFIC, in its sole and absolute discretion, to protect it from actual or anticipated Loss.

47. The Indemnity Agreement defines Loss to include, *inter alia*, all demands, liabilities, losses, costs, damages, and expenses of any kind or nature, including legal fees and expenses, incurred by USFIC by reason of (a) USFIC having issued any Bonds on behalf of Principal, (b) USFIC's investigation in relation to any Bonds or Contracts, (c) the failure of the Defendants to perform their obligations under the Indemnity Agreement, and (d) USFIC's enforcement of the Indemnity Agreement by litigation or otherwise.

48. As reflected in Paragraph 7 of the Indemnity Agreement, the Defendants agreed and are equitably and contractually estopped from denying that their failure to immediately deposit collateral as demanded by USFIC shall cause irreparable harm to USFIC for which USFIC has no adequate remedy at law.

49. As further reflected in Paragraph 7 of the Indemnity Agreement, by executing the Indemnity Agreement, the Defendants agreed and are equitably and contractually estopped from denying that USFIC is entitled to injunctive relief for specific performance of their obligation to deposit collateral security.

50. USFIC currently deems the amount of $687,214, reflecting J. Cumby's updated costs to complete the Kingsport Subcontract less the balance of the Kingsport Subcontract, sufficient, at the present time, to hold it harmless from and against actual and potential Loss in relation to J. Cumby's demand on the Cumby Performance Bond but reserves the right to increase this demand to the extent its exposure for Loss increases.

51. Despite demand, the Defendants have failed to collateralize USFIC in material breach of Paragraph 7 of the Indemnity Agreement.

52. The Defendants' breach of Paragraph 7 of the Indemnity Agreement has immediately and irreparably harmed USFIC.

53. USFIC does not possess an adequate remedy at law in relation to the Defendants' breach of Paragraph 7 of the Indemnity Agreement.

54. USFIC is therefore entitled to, among other things, the entry of a preliminary injunction and/or judgment compelling specific performance of the Defendants' obligation to deposit a sum of money as collateral security with USFIC in the amount of $687,214, which is the amount that USFIC has deemed necessary, at the present time, to protect itself from actual and potential Loss, provided that USFIC reserves the right to increase this demand to the extent its exposure for Loss increases.

### Count III – Equitable Indemnity, Reimbursement and Exoneration
### (Principal)

55. USFIC hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

56. Pursuant to common law right of exoneration, indemnification, and reimbursement, USFIC is entitled to exoneration, indemnification, and/or reimbursement from Principal, as the principal on the Bonds, for all loss suffered by USFIC, as surety, by reason of having issued the Bonds on behalf of Principal.

57. Therefore, Principal is liable to USFIC for all losses suffered and anticipated to be suffered by USFIC by reason of having issued the Bonds on behalf of USFIC, which amount currently exceeds $90,324.99 and will be proven at trial.

# Count IV – *Quia Timet*
## (Principal)

58. USFIC hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

59. Pursuant to its equitable remedy of *quia timet*, USFIC is entitled to be provided money and/or property by Principal sufficient to exonerate USFIC, as surety, from and against any loss that has resulted to USFIC by reason of having executed the Bonds, which amount will be proven at trial.

WHEREFORE PREMISES CONSIDERED, USFIC prays for the following relief:

a) For the issuance of process requiring each of the Defendants to answer USFIC's Complaint;

b) For the entry of judgment against the Defendants, jointly and severally, in an amount sufficient to fully exonerate, reimburse, indemnify, keep indemnified, hold harmless and collateralize USFIC from and against any and all Loss, which amount currently exceeds $777,538.99 and will be proven at trial;

c) For the entry of a preliminary injunction and/or judgment compelling the Defendants to deposit a sum of money as collateral security with USFIC in the amount of $687,214 (though USFIC expressly reserves the right to demand additional collateral in the future);

d) For the entry of a judgment against Principal for all losses suffered and anticipated to be suffered by Principal by reason of having issued the Bonds on behalf of Principal, which amount currently exceeds $90,324.99 and will be proven at trial;

e) For the entry of a judgment against Principal for money and/or property sufficient to exonerate USFIC, as surety, from and against any loss that has resulted to USFIC by reason of executing the Bonds, which amount will be proven at trial; and

f) For such further relief, both general and specific, as may be appropriate in accordance with the nature of the cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

 /s/ Melissa Jane Lee
--- 

Melissa Jane Lee (BPR # 029228)
Taylor S. Ward (BPR #037653)
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
(615) 244-0030
(615) 242-4203 (facsimile)
mlee@manierherod.com
twarde@manierherod.com
*Attorneys for U.S. Fire Insurance Company*