UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 2:22-cv-00028<br>) |
| NORRIS BROS. EXCAVATING, LLC,<br>NORRIS BROS. PROPERTIES, LLC,<br>JACOB NORRIS, AND JUSTIN NORRIS, | )<br>)<br>)<br>)<br>) |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this breach of contract action against Norris Brothers Excavating, LLC ("NBE"), Norris Brothers Properties, LLC ("NBP"), Jacob Norris, and Justin Norris is United States Fire Insurance Company's ("USFIC") Motion for Summary Judgment. With one overriding exception the facts are undisputed.

As set forth by USFIC, the facts are as follows:

1. NBE, Jacob Norris, and Justin Norris executed a General Indemnity Agreement, dated October 1, 2019, in favor of USFIC as inducement for USFIC to issue certain surety bonds on behalf of NBE.

2. NBP is a related entity and affiliate to NBE and is partially owned and controlled by Jacob Norris and Justin Norris.

3. Jacob Norris and Justin Norris have an ownership or beneficial interest in NBP.

4. In reliance upon the Indemnity Agreement, USFIC issued performance and payment bonds on behalf of NBE in relation to two separate construction projects.

5. USFIC issued Performance Bond No. 602-126715-6 and Payment Bond No. 602-126715-6 (the "Ridgely Payment Bond") pertaining to a contract between NBE and the Town of Ridgely, Tennessee relating to the Ridgely Lagoon Baffle Curtains and Aerators project ("Ridgley Project").

6. USFIC also issued Performance Bond No. 602-126712-9 (the "Cumby Performance Bond") and Payment Bond No. 602-125712-9, pertaining to a subcontract between NBE and J. Cumby Construction, Inc. ("J. Cumby") relating to the West Kingsport Pump Station (the "Kingsport Project").

7. Cottrell Electric, Inc. ("Cottrell"), a subcontractor to NBE on the Ridgely Project, asserted a claim against the Ridgely Payment Bond as a result of NBE's inability to pay Cottrell for labor and/or materials furnished on the Ridgely Project.

8. Pursuant and subject to its rights and obligations under the Ridgely Payment Bond and the Indemnity Agreement, USFIC paid and resolved Cottrell's demand on the Ridgely Payment Bond for the sum of $90,324.99.

9. USFIC issued payment to Cottrell in the amount of $90,324.99 in good faith and based on the belief that it was liable for the amounts disbursed and/or that it was necessary or expedient to make such payments to Cottrell.

10. NBE received payment from the Town of Ridgely in the amount of $28,140.19 in relation to the Ridgely Project and tendered those sums to USFIC in partial satisfaction of the Loss that USFIC sustained under the Ridgely Payment Bond.

11. USFIC has incurred an unreimbursed Loss on the Ridgely Payment Bond in the amount of $62,184.80 ($90,324.99 less $28,140.19) for which the Indemnitors are jointly and severally obligated to indemnify and reimburse USFIC.

12. In a letter dated February 16, 2021, J. Cumby terminated its subcontract with NBE pertaining to the Kingsport Project (the "Kingsport Subcontract") and made demand to USFIC pursuant to the Cumby Performance Bond.

13. NBE disputed the termination, and J. Cumby arranged to complete the Kingsport Subcontract.

14. On or around December 20, 2021, J. Cumby submitted a sworn Proof of Claim in relation to its demand on the Cumby Performance Bond.

15. On May 17, 2022, USFIC transmitted a letter to the Indemnitors in which USFIC demanded that the Indemnitors indemnify and collateralize USFIC pursuant to the terms of the Indemnity Agreement (the "Collateral Demand").

16. The Indemnitors failed to respond to the Collateral Demand.

17. Pursuant to USFIC's rights under the Indemnity Agreement, USFIC agreed to pay J. Cumby the sum of $375,000 in full resolution and release of J. Cumby's demand on the Cumby Performance Bond and claims against USFIC and NBE.

18. Pursuant to the terms of the settlement, USFIC also agreed to reimburse J. Cumby the sum of $9,637.35, reflecting one-half of the costs charged by the Kingsport Project engineer, Hazen & Sawyer, PCO, to testify and respond to a subpoena duces tecum.

19. USFIC issued payment in the amount of $384,637.35 to J. Cumby in satisfaction of its promises under the settlement agreement.

20. The $384,687.35 paid to J. Cumby constitutes Loss as defined by the Indemnity Agreement for which the Indemnitors are jointly and severally obligated to indemnify and reimburse USFIC.

21. Further, USFIC has been forced to retain counsel and has incurred and continues to incur attorneys' fees and related costs and expenses as a result of having issued the Bonds on behalf of NBE and enforcing the Indemnity Agreement, all such fees, costs, and expenses constituting Loss under the Indemnity Agreement.

22. USFIC has incurred attorney's fees, costs, and expenses in the current amount of no less than $61,654.16 for which the Indemnitors are jointly and severally obligated to pay to USFIC pursuant to the Indemnity Agreement.

23. USFIC has incurred unreimbursed Loss in the current amount of no less than $508,476.31 as a result of having issued the Bonds and by reason of the failure of the Indemnitors to comply with the Indemnity Agreement.

24. USFIC issued all payments in good faith and based on the belief that it was or might be liable for the sums disbursed and that it was necessary and expedient to make such disbursements.

25. The Indemnitors have failed to fully indemnify USFIC for the Loss that it has incurred as a result of having issued the Bond and by reason of the failure of the Indemnitors to comply with the Indemnity Agreement, which constitutes a material breach of the Indemnity Agreement.

(Doc. No. 18 at 1-7) (citations to record omitted).

The "overriding exception" previously noted is that NBP asserts it is not an indemnitor because it indisputably did not sign the agreement. Consequently, NBP argues that it is not liable for the losses, costs and attorney's fees claimed by USFIC.

Even though the Agreement provides that it "shall be governed by the laws of the State of New York, without regard to conflicts of laws principles," (Doc. No. 1-2 at 4), "choice of law issues

may be waived or forfeited by declining to assert them in litigation." Orgone Cap. III, LLC v. Daubenspeck, 912 F.3d 1039, 1044 (7th Cir. 2019) (collecting cases). USFIC has affirmatively done so here by repeatedly citing to, and relying on, Tennessee law regarding indemnity agreements, both in its opening and reply briefs. (Doc. No. 17 at 10-18; Doc. No. 28 at 2-3). USFIC's intent to forfeit could not be any clearer when it argues: "[t]he Indemnity Agreement was executed in the State of Tennessee, and, therefore, Tennessee law governs its interpretation and enforcement." (Id. at 11).[1]

USFIC seeks to hold NTB liable based upon the following clause in the Agreement:

> The term "indemnitor" shall mean the undersigned persons or entities, individually and collectively, and all of their existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, related entities, co-venturers, joint ventures, affiliates, subsidiaries, divisions, and marital communities along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any Indemnitor has ownership or beneficial interest. Indemnitor shall also include any Principal. The term "Indemnitor" shall also include all Indemnitors added to this Agreement by rider, and all of their heirs, executors, administrators, successors and assigns, and any entity that obtains Bonds from Company at the request of the aforementioned parties, or any combination of the above.

(Doc. No. 1-1 at 1). Such sweeping language reads much like that found in mutual releases and makes sense in that context. At least based upon the present record, however, the same cannot be said where USFIC is seeking to impose affirmative obligations on a non-signatory.

"Under general principles of contract law, a contract must result from a meeting of the minds

---

[1] It is true, as USFIC submits, that "Tennessee follows the rule of *lex loci contractus*, which means simply that the law of the place where the contract is made governs the construction and validity of the contract." Thompson v. Am. Gen. Life & Acc. Ins. Co., 448 F. Supp. 2d 885, 887 (M.D. Tenn. 2006). The rule, however, is subject to there being no choice of law provision in the contract and assumes "the state whose law is chosen bears a reasonable relation to the transaction" and does not "violat[e] the forum state's public policy." Wright v. Rains, 106 S.W.3d 678, 681 (Tenn. Ct. App.2003). For whatever reason, USFIC has chosen to forego New York law and the Court has no reason for not doing the same.

4

of the parties in mutual assent to the terms." Sweeten v. Trade Envelopes, Inc., 938 S.W.2d 383, 386 (Tenn.1996) (citation omitted). "It is fundamental that a contract is enforceable only to the extent that it is assented to by the parties." Id. "'[T]he existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined . . . not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances.'" Moody Realty Co. v. Huestis, 237 S.W.3d 666, 675 (Tenn. Ct. App. 2007) (quoting Scandlyn v. McDill Columbus Corp., 895 S.W.2d 342, 345 (Tenn. Ct. App. 1994)). "Whether a meeting of the minds occurred is a question of fact." In re Est. of Josephson, No. M2011-01792-COA-R3CV, 2012 WL 3984613, at *2 (Tenn. Ct. App. Sept. 11, 2012) (cioting 17B C.J.S. CONTRACTS § 1008 (2012)).

Furthermore, and relatedly, "[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Gurley v. King, 183 S.W.3d 30, 36–37 (Tenn. Ct. App. 2005). And, as a general proposition, indemnity agreements are to be strictly construed. See Kellogg Co. v. Sanitors, Inc., 496 S.W.2d 472, 474 (Tenn.1973); Kroger Co. v. Giem, 215 Tenn. 459, 387 S.W.2d 620, 626 (1964).

"[T]he burden of proving the existence of a valid contract is upon the person relying on the contract," Randolph v. Randolph, 937 S.W.2d 815, 821 (Tenn. 1996), which in this case is USFIC. Likewise, as the party moving for summary judgment, it is USFIC's burden to establish that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c).

To be sure, companies can only act through individuals. However, from the undisputed facts,

5

the Court can only discern that Jacob and Justin Norris executed the General Indemnity Agreement of October 1, 2019 on behalf of themselves and NBE, and that they partially own/control NBP, which is somehow related to NBE. What the Court does not know, however, is probably just as important. For example, the Court does not know whether as an "affiliate" NBP is upstream or downstream from NBE, nor does the Court know what role(s) the Norris's have in relation to NBP. More fundamentally, the Court does not know why – if the intent of the parties was to bind NBP – Justin and Jacob Norris did not sign on its behalf, as they had done for NBE.

On this score, it is notable that the Agreement attached a "Limited Liability Company Acknowledgment" wherein Jacob Norris swore before a notary public that he executed the Agreement on behalf of "Norris Bros. Excavating, LLC," "with full authority to do so from the Members of the limited liability company, [and] that s/he freely and voluntarily executed the foregoing instrument on behalf of the limited liability company for the uses and purposes set forth therein." Doc. No. 1-2 at 8. No such acknowledgment was made for NBP, begging the question why, if the parties truly contemplated and intended to hold NBP liable.

In reaching the conclusion that summary judgment is inappropriate as to NBP, the Court has considered the two cases from "other jurisdiction [that] have considered this issue and decided in favor of the surety." (Doc. 28 at 4). Both – U.S. Fid. & Guar. Co. v. Sequip Participacoes, S.A., No. 98 CIV. 3099 (THK), 2003 WL 22743430, at *6 (S.D.N.Y. Nov. 19, 2003) and Star Ins. Co. v. Zanis Constr. Corp., No. 99 CIV. 9065 LAK, 2000 WL 91941, at *2 (S.D.N.Y. Jan. 27, 2000) – are from the Southern District of New York, one applied New York law while the other applied Michigan law, and neither is controlling. Moreover, it is clear that Seqiup was decided on much more fulsome record than that here. Star's discussion about the scope of the indemnity agreement

6

is *dicta* because the court denied a motion to dismiss and cross-motion for summary judgment because neither party addressed the "effect of the form attachments" to the indemnity agreement. 2000 WL 91941, at *3.

Summary judgment is, however, warranted on the claims against Justin and Jacob Norris and NBE. Justin Norris signed the indemnity agreement on behalf of himself and Jacob Norris signed it on behalf of himself and as the "Managing Member" of NBE. (Doc. No. 1-2 at 5-6). These facts are not disputed by them, nor do they dispute that USFIC issued performance and payment bonds to Ridgely and Cumby and USFIC paid and resolved claims by them as it was entitled to do under the Agreement. In fact, they did not separately respond to USFIC's Motion for Summary Judgment.

Accordingly, and for the foregoing reasons, USFIC's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to USFIC's claims against Jacob Norris, Justin Norris and Norris Bros. Excavating, LLC, but is **DENIED** with respect to the claims against Norris Bros. Properties, LLC.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE